07-Civ.-8032 (LAK)(AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVATORE COSTA,

                Plaintiff,

-against-

THE CITY OF NEW YORK and CHIEF JOE FOX,

                Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

# MICHAEL A. CARDOZO

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-184
New York, N.Y.  10007-2601

Of Counsel:    Ivan A. Mendez, Jr.
Tel:            (212) 788-8688

Matter No.: 2007-029207

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT

      THE COMPLAINT FAILS TO STATE A CLAIM UPON
      WHICH RELIEF CAN BE GRANTED. ................................................................. 4

          A.  Constructive Discharge ......................................................................... 4

          B.  The Complaint's "Class of One" Claim Fails As A
              Matter Of Law ....................................................................................... 7

          C.  Chief Fox Is Entitled To Qualified Immunity ..................................... 10

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**  **Pages**

Anderson v. Creighton,
    483 U.S. 635, 107 S. Ct. 3034 (1987)..................................................................................10

Benitez v. Wolff,
    985 F.2d 662 (2d Cir. 1993).................................................................................................10

Benvenisti v. City of New York,
    No. 04 CV 3166, 2006 U.S. Dist. LEXIS 73373 (S.D.N.Y. Sept. 23, 2006) .......................9

Bernheim v. Litt,
    79 F.3d 318 (2d Cir. 1996)....................................................................................................9

Bishop v. Wood,
    426 U.S. 341, 96 S. Ct. 2074 (1976).....................................................................................9

Bizzarro v. Miranda,
    394 F.3d 82 (2d Cir. 2005)............................................................................................7, 11

Butts v. N.Y. City Department of Housing Preservation & Development,
    No. 00 CV 6307, 2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. Jan. 29, 2007) ...........................6

Cartier v. Lussier,
    955 F.2d 841 (2d Cir. 1992)................................................................................................11

Connick v. Meyers,
    461 U.S. 138, 103 S. Ct. 1684 (1983)...................................................................................9

Cunningham v. Consol. Edison, Inc.,
    No. 03 CV 3522, 2006 U.S. Dist. LEXIS 22482 (S.D.N.Y. March 28, 2006).....................6

Fridia v Henderson,
    No. 99 CV 10749, 2000 WL. 1772779 (S.D.N.Y. Nov. 30, 2000) ......................................4

Garcetti v. Ceballos,
    547 U.S. ___, 126 S. Ct. 1951 (2006)...................................................................................9

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S. Ct. 2727 (1982).................................................................................10

Hill v. Rayboy-Brauestein,
    No. 02 CV 3770, 2006 WL. 3298383 (S.D.N.Y. Nov. 9, 2006) ..........................................4

**Cases**                                                                                                                **Pages**

Kaminsky v. Rosenblum,
    929 F.2d 922 (2d Cir. 1991)......................................................................................................10

Katz v. Beth Israel Medical Ctr.,
    No. 95 Civ. 7183, 2001 U.S. Dist. LEXIS 29, 2001 WL. 11064
    (S.D.N.Y. Jan. 4, 2001)........................................................................................................4, 6

Kerman v. City of New York,
    261 F.3d 229 (2d Cir. 2001).....................................................................................................10

Le Clair v. Saunders,
    627 F.2d 606 (2d Cir. 1980).....................................................................................................11

Malley v. Briggs,
    475 U.S. 335, 106 S. Ct. 1092 (1986)......................................................................................11

Mathurin v. Skrivaneck,
    No. 00 Civ. 1762, 2003 U.S. Dist. LEXIS 10200,
    2003 WL. 23744279 (S.D.N.Y. June 10, 2003). ......................................................................5

Mitchell v. Forsyth,
    472 U.S. 511, 105 S. Ct. 2806 (1985)......................................................................................10

Muller v. U.S. Steel Corp.,
    509 F.2d 923 (10th Cir. 1975) ...................................................................................................5

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005)...................................................................................................7, 8

Nugent v. St. Luke's/Roosevelt Hospital Ctr.,
    No. 05 CV 5109, 2007 U.S. Dist. LEXIS 28274 (S.D.N.Y April 18, 2007) ...........................5

Pena v. Brattleboro Retreat,
    702 F.2d 322 (2d Cir. 1983).......................................................................................................4

Petrosino v. Bell Atlantic,
    385 F.3d 210 (2d Cir. 2004).......................................................................................................5

Phillips v. General Dynamics Corp.,
    811 F. Supp. 788 (N.D.N.Y. 1993).............................................................................................5

**Cases** **Pages**

Querry v. Messar,
    66 F. Supp. 2d 563 (S.D.N.Y. 1999)..................................................................................8

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987)..............................................................................................11

Rodriguez v. Graham-Windham Servs. to Families & Children,
    No. 99 Civ. 10447, 2001 U.S. Dist. LEXIS 362,
    2001 WL 46985, (S.D.N.Y. Jan. 18, 2001) ........................................................................5

Spence v. Maryland Cas. Co.,
    995 F.2d 1147 (2d Cir. 1993).............................................................................................6

Stetson v. NYNEX,
    995 F.2d 355 (2d Cir. 1993)...........................................................................................4, 5

Trinidad v. N.Y. City Dep't of Corr.,
    423 F. Supp. 2d 151 (S.D.N.Y. 2006)................................................................................7

Village of Willowbrook v. Olech,
    528 U.S. 562, 120 S. Ct. 1073 (2000)..........................................................................7, 11

Weg v. Macchiavola,
    995 F.2d 15 (2d Cir. 1993)................................................................................................10

Ying Jing Gan v. the City of New York,
    996 F.2d 522 (2d Cir. 1993)..............................................................................................10

**Statutes**

42 U.S.C. § 1983.............................................................................................................................1

N.Y. Civ. Prac. L.and R. Art. 78, §§ 7801, et seq., and § 7803 (3) ......................................................

**PRELIMINARY STATEMENT**

Plaintiff, a retired Lieutenant formerly employed by the City of New York ("City") in the City's Police Department ("NYPD"), brings this § 1983 action against the City, and NYPD Assistant Commissioner Joseph Fox ("Chief Fox")[1], alleging that he was retaliated against for lawfully performing his duties as an NYPD Lieutenant. Plaintiff alleges that in 2004, he issued a summons to a "friend" of Chief Fox, and that Chief Fox thereafter initiated a campaign of retaliation against him, including harassment, a transfer, and eventually forcing him to retire prematurely. Defendants moved to dismiss the original complaint, which motion was granted with leave to re-plead. Plaintiff filed an amended complaint ("Amended Complaint") and defendants now move to dismiss the Amended Complaint.

First, plaintiff's "claim" for constructive discharge fails as a matter of law, because plaintiff's working conditions over the 2 month period at issue cannot possibly approach the standard for constructive discharge. Even under the most liberal pleading rules this claim must be dismissed.

Second, plaintiff's "class of one" claim is fatally flawed. Plaintiff would convert the Fourteenth Amendment's Equal Protection Clause into a vehicle for the review of internal governmental operations unrelated to any protected constitutional right or any protected individual characteristic. Plaintiff's invitation to turn the Court into a government oversight committee under the rubric of constitutional adjudication must be rejected.

Finally, Chief Fox is entitled to qualified immunity because the contours of the constitutional right plaintiff claims he was deprived of, were not clearly established at the time

---

[1] As with the original complaint, here Chief Fox is sued as "Chief Joe Fox." References to "§1983" are to 42 U.S.C. § 1983.

Chief Fox allegedly wronged plaintiff. Accordingly, defendants respectfully request that their motion be granted, and that the Amended Complaint be dismissed with prejudice.

## STATEMENT OF FACTS[2]

Plaintiff was appointed as a Police Officer in the NYPD on July 16, 1984. See First Amended Complaint, dated December 9, 2007 ("Amended Complaint"), ¶ "9," which is annexed hereto as Appendix "A," for the convenience of the Court. Plaintiff was promoted to the ranks of Sergeant and Lieutenant in December, 1998, and March, 2002, respectively. Id. ¶¶ "10," and "11." On October 18, 2004, plaintiff issued a summons to retired NYPD Sergeant Louis A. Campanelli for failing to wear a seatbelt while driving a motor vehicle. Id. ¶¶ "12," "13." Plaintiff alleges that Mr. Campanelli and Chief Fox worked together when they were Police Officers, and that they "continue to be friends today." Id. ¶¶ "14," 15." According to plaintiff, the day after he issued a summons to Mr. Campanelli, "at the direction of [Chief] Fox, Captain Dominik Collisuano called plaintiff at his home and stated that Plaintiff was in 'big trouble' because he wrote a summons to Campanelli." Id. ¶ "16." Plaintiff alleges that Captain Collisuano demanded that plaintiff provide him with a copy of the summons he issued to Mr. Campanelli. Id. ¶ "17."

Two days later, according to plaintiff, two unnamed NYPD Inspectors, Captain Jackle and Lieutenant Richard Tully arrived at the plaintiff's precinct while he was conducting roll call, and searched plaintiff's locker and uniform shirt and pant pockets "purportedly seeking a memo book that Plaintiff reported missing." Amended Complaint at ¶¶ "18," "19." Plaintiff further alleges that on October 28, 2004, plaintiff was sent to the NYPD Inspections Unit where he was

---

[2] On a motion to dismiss, the allegations of fact in the complaint are deemed true and the legal sufficiency of the complaint is tested. This statement of facts is drawn from the Amended Complaint and defendants neither admit nor deny any of the facts alleged therein.

2

"interrogated for two hours as to why he issued a summons to Campanelli." Id. ¶ "21." Thereafter, plaintiff alleges that he was transferred to the NYPD's 69th Precinct, which, according to plaintiff, is the farthest Brooklyn Precinct from his home. Id. ¶ "22." Plaintiff alleges that his assignment to the day shift at the 69th Precinct resulted in a 10% decrease in his salary. Id. ¶ "23." He also contends that pursuant to orders of Chief Fox, he was not allowed to take the time he wanted off from work, and was subjected to absurd and unnecessary levels of scrutiny. Id. ¶¶ "24," and "25." This, according to plaintiff, was done in order to force him to retire prematurely. Id. ¶¶ "25," and "28." Plaintiff alleges that as a result of the purported harassment he was subjected to at the 69th Precinct, he "chose to retire on December 31, 2004", only two months after his transfer. Id. ¶ "31."

On September 13, 2007, plaintiff commenced this action, alleging that defendants retaliated against him and constructively terminated his employment because he issued a traffic summons to a friend of Chief Fox.

On November 6, 2007, defendants moved to dismiss on the grounds that plaintiff failed to state a claim upon which relief could be granted.

By Order, dated November 28, 2007, the Court granted defendants' motion to dismiss, without prejudice, and granted plaintiff leave to submit an amended complaint.

On December 12, 2007, plaintiff filed an amended complaint, dated December 9, 2007, and defendants now move to dismiss.

**ARGUMENT**

**THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**A.    Constructive Discharge**

As an initial matter, none of the actions of which plaintiff complains are materially adverse employment actions, let alone sufficient to satisfy the high standard for constructive discharge. Not everything that an employee dislikes constitutes a materially adverse employment action. See, e.g., Fridia v Henderson, No. 99 CV 10749, 2000 WL 1772779, at *7 (S.D.N.Y. Nov. 30, 2000) (excessive work, denials of requests for leave with pay and a supervisor's general negative treatment of the plaintiff are not materially adverse changes in the terms, conditions or privileges of employment); Katz v Beth Israel Med. Ctr., No. 95 CV 7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions"). Nor can the cumulative effect of the individually alleged adverse employment actions substitute for showing an actual adverse action. Hill v. Rayboy-Brauestein, No. 02 CV 3770, 2006 WL 3298383, at *23 n.22 (S.D.N.Y. Nov. 9, 2006).

In the Second Circuit, the standard for a constructive discharge claim is very high. In order to state a claim for constructive discharge, "plaintiff must show that the employer 'deliberately m[ade his] working conditions so intolerable that [he was] forced into involuntary resignation.'" Stetson v. NYNEX, 995 F.2d 355, 360-61 (2d Cir. 1993)(quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 324 (2d Cir. 1983)). "The fact that an employee 'feels that the quality of his work has been unfairly criticized,' or that [his] working conditions were

'difficult or unpleasant,' is insufficient to support a constructive discharge claim."[3] Nugent v. St. Luke's/Roosevelt Hosp. Ctr., No. 05 CV 5109, 2007 U.S. Dist. LEXIS 28274, at *48 (S.D.N.Y April 18, 2007)(quoting Stetson, 995 F.2d at 360); see Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004) (finding no constructive discharge where plaintiff endured "(1) years of harassment in a work environment hostile to women, including years of being denied promotion opportunities because of her sex; (2) recommendations by her [] supervisors that she transfer [] to secure better promotion opportunities, when, in fact, no such promotion would be possible for more than a year … ."). As Judge Karas of this Court held earlier this year:

> a single reduction in pay, without additional evidence of malicious intent, is insufficient to establish a claim of constructive discharge. See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993)(holding that plaintiff's allegation that he did not receive sufficient pay increases did not constitute constructive discharge); Muller v. U.S. Steel Corp., 509 F.2d 923, 929 (10th Cir. 1975) (holding that discriminatory failure to promote and demotion were insufficient to demonstrate intent to make workplace intolerable); see also Mathurin v. Skrivaneck, No. 00 Civ. 1762, 2003 U.S. Dist. LEXIS 10200, 2003 WL 23744279, at *14 (S.D.N.Y. June 10, 2003) (Report and Recommendation) (holding that intense scrutiny of plaintiff, even if coupled with "economic consequences," was insufficient to show workplace was intolerable); Rodriguez v. Graham-Windham Servs. to Families & Children, No. 99 Civ. 10447, 2001 U.S. Dist. LEXIS 362, 2001 WL 46985, at *6 (S.D.N.Y. Jan. 18, 2001) (finding no constructive discharge when employer demoted employee instead of terminating her); Phillips v. General Dynamics Corp., 811 F. Supp. 788, 794 (N.D.N.Y. 1993)("Lower pay resulting from gender discrimination is not sufficient.").

---

[3] Pursuant to Your Honor's Individual Practice Rules, this and several other unreported decisions which defendants cite to in this Memorandum of Law, are collectively annexed hereto as Appendix "B."

5

Butts v. N.Y. City Dep't of Hous. Preservation & Dev., No. 00 CV 6307, 2007 U.S. Dist. LEXIS 6534, at *73-74 (S.D.N.Y. Jan. 29, 2007).

Here, plaintiff's constructive discharge claim fails as a matter of law.  Plaintiff alleges a longer commute, loss of a preferred shift, loss of additional compensation attendant to the shift he desired, and excessive scrutiny of his performance.  Amended Complaint ¶¶ "22," "23," "24," and "25."  At maximum, these conditions lasted a total of two months, from October 28th, until plaintiff's retirement on December 31st.  Id. ¶ "21," "22," and "31."  Plaintiff does not allege, for example, that he was served with disciplinary charges, or even written up during these two months at the 69th Precinct.  Nor does he allege that he was demoted, disciplined, or harassed by Chief Fox or any of his subordinates.

Assuming as we must, that all of these allegations are true, and granting plaintiff every favorable inference, these allegations are patently insufficient to state a plausible constructive discharge claim.  This is especially true given the short duration of these "conditions," a 2 month period.  Indeed, as was said in Butts, "[n]umerous courts in this district have refused to find constructive discharge in situations much more egregious than those alleged here. See Spence v. Maryland Cas. Co., 995 F.2d 1147, 1149-52 (2d Cir. 1993) (no constructive discharge despite ridicule, threats of termination, constant harassment, and improper discipline); Nakis, 422 F. Supp. 2d at 415-16 (citing cases); Katz v. Beth Israel Medical Ctr., No. 95 Civ. 7183, 2001 U.S. Dist. LEXIS 29, 2001 WL 11064 at *12 (S.D.N.Y. Jan. 4, 2001) (finding no constructive discharge where a plaintiff alleged that she was told to retire, unfairly disciplined, and threatened with termination)."  Butts, 2007 U.S. Dist. LEXIS 6534, at *75; see Cunningham v. Consol. Edison, Inc., No. 03 CV 3522, 2006 U.S. Dist. LEXIS 22482, at *53 (S.D.N.Y. March 28, 2006)("The relevant working conditions in this case include the following: plaintiff was twice

6

suspended, terminated but reinstated, experienced delays in the processing of his back pay and tuition reimbursement, was intentionally failed on a precision instruments practical test and had his e-mail suspended. These working conditions do not rise to the level of constructive discharge."). Accordingly, plaintiff's constructive discharge claim must be dismissed.

It should also be noted that plaintiff's failure to allege the "discriminatory element of [a] hostile work environment claim is [] fatal to [his] constructive discharge claim." Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006)(internal citations omitted). Accordingly, the plaintiff's constructive discharge "claim" must be dismissed.

**B.      The Complaint's "Class of One" Claim Fails As A Matter Of Law**

In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000), the Supreme Court recognized that an Equal Protection Clause claim may arise in unusual cases where plaintiff is intentionally treated differently from other similarly-situated individuals without any rational basis whatsoever. Id. at 564; accord Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005). Since the Supreme Court's decision in Olech, the Second Circuit has held that "class of one" plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. See Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). This showing is more stringent than that used at the summary judgment stage in the employment discrimination context. Id. at 105. This is because "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff" in a "class of one" case "is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose--whether personal or otherwise--is all but certain." Id. At a minimum, to succeed on a "class of one" claim, a plaintiff must establish that:

7

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Id.

Thus, in order for plaintiff to state a plausible "class of one" claim, he must, at a minimum, allege that other Lieutenants (not Police Officers, Sergeants, Detectives, etc.), who were similarly situated in all material respects, also issued summonses to "friends" of Chief Fox but were not retaliated against. See Neilson, 409 F.3d at 104 (similarity between plaintiff and comparators must be extremely high); Querry v. Messar, 66 F. Supp. 2d 563, 572 (S.D.N.Y. 1999)(police officer and police sergeant not similarly situated). Plaintiff does not allege that other NYPD lieutenants issued summonses to "friends" of Chief Fox but were not retaliated against. This failure is fatal to plaintiff's "class of one" claim and requires its dismissal.

Were the Court to accept plaintiff's "class of one" argument, the federal court system would become a general oversight body reviewing the myriad grievances of government employees. The Equal Protection Clause and federal jurisdiction would be substituted for routine "arbitrary or capricious" proceedings in New York State's courts. See N.Y. Civ. Prac. L. and R. Art. 78, §§ 7801, et seq., and § 7803(3) (an Article 78 can test "whether a determination … was arbitrary and capricious or an abuse of discretion …."). The "class of one" theory cannot be read so broadly and the Equal Protection Clause cannot be transformed into a vehicle for routine federal review of state and local government decisions.

Thirty years ago the Supreme Court warned of the over-expansion of constitutional litigation that would transform the federal courts into an agency overseeing the internal operations of the government acting as employer:

> [w]e must presume that official action was regular, and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 2080 (1976). In that case, a former employee attempted to expand the Due Process Clause to review actions that plaintiff thought unfair. Here, plaintiff is attempting to inject the federal courts in the very same way, for the very same kinds of reasons, but this time using the Equal Protection, rather than the Due Process, Clause. Here, as was the case 30 years ago, the attempt must be rejected.

The same view of government employer/employee relations can be found in the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. ___, 126 S. Ct. 1951 (2006). In Garcetti, the plaintiff attempted to use the First Amendment, which protects public employees' speech in certain instances, to inject the Court into the employee disciplinary process. The Supreme Court rejected the attempt, holding that the First Amendment does not empower employees to "constitutionalize the employee grievance." 126 S. Ct. 1951, 1959 (2006) (quoting Connick v. Meyers, 461 U.S. 138, 154, 103 S.Ct. 1684, 1693-94 (1983)); see Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996); Benvenisti v. City of New York, No. 04 CV 3166, 2006 U.S. Dist. LEXIS 73373, at *21 (S.D.N.Y. Sept. 23, 2006). The Supreme Court reasoned that "government employers, like private employers, need a significant degree of control over their employees' words and actions" to operate efficiently and provide necessary services. Garcetti, 126 S.Ct. at 1958. The Supreme Court's sound reasoning in Garcetti, and Bishop, apply squarely to the action sub judice, and require that plaintiff's alleged "class of one" claim be dismissed.

9

**C.     Chief Fox Is Entitled To Qualified Immunity.**

The doctrine of qualified immunity shields government officials from liability for damages in connection with the performance of discretionary official functions, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738-39 (1982); Weg v. Macchiavola, 995 F.2d 15, 18 (2d Cir. 1993). The purpose of qualified immunity is to avoid unduly chilling official action by exposing officials to personal damage liability for good faith judgments. Harlow, 457 U.S. at 814-15, 102 S.Ct. at 2736-37. Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816 (1985).

The availability of the qualified immunity defense turns on the "objective legal reasonableness" of the allegedly unlawful action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987); Ying Jing Gan v. the City of New York, 996 F.2d 522, 531 (2d Cir. 1993); Benitez v. Wolff, 985 F.2d 662, 666 (2d Cir. 1993). "The objective element of this test requires the court to look beyond the generalized constitutional protection, such as the right to be free of unreasonable searches and seizures, and to determine whether the law is clearly established in a more particularized sense." Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001).

Even if the constitutional right in question is clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). The official's actions are objectively reasonable where "officers of reasonable

competence could disagree" on whether the conduct at issue violated clearly established rights. In such circumstances qualified immunity applies and shields the individual defendant from suit under section 1983. <u>Cartier v. Lussier</u>, 955 F.2d 841, 847 (2d Cir. 1992); <u>Robison v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987); see <u>Malley v. Briggs</u>, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 1095-96 (1986).  The doctrine of qualified immunity provides protection "to all but the plainly incompetent or those who knowingly violate the law."  <u>Id</u>.

In the event the Court denies defendants' motion to dismiss, it should nevertheless dismiss Chief Fox from this action because qualified immunity shields him from suit.  Assuming the facts alleged in the Complaint are true, Chief Fox's actions were not violative of a "clearly established right."  As noted by the Second Circuit in <u>Bizzarro</u>, the parameters of "class of one" claims under <u>Olech</u>, were unclear when <u>Bizarro</u>, was decided in 2005, and frankly remain unclear today.  394 F.3d at 88.  Even prior to <u>Olech</u>, violations of equal protection predicated not on protected class status, but on "selective treatment motivated by ill-will", were considered to be "lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply."  <u>Le Clair v. Saunders</u>, 627 F.2d 606, 608 (2d Cir. 1980).  Accordingly, in light of the fact that reasonable officials could disagree whether the conduct imputed to Chief Fox was unconstitutional at the time the alleged acts took place, Chief Fox is entitled to qualified immunity, and all claims against him should be dismissed.

11

## CONCLUSION

**WHEREFORE**, defendants respectfully request that their motion to dismiss be granted, that an order dismissing the Amended Complaint be issued, that judgment in favor of defendants be entered and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 27, 2007

>                    MICHAEL A. CARDOZO
>                    Corporation Counsel of the
>                      City of New York
>                    Attorney for Defendants
>                    100 Church Street, Room 2-184
>                    New York, New York 10007-2601
>                    (212) 788-8688
>
> By:   **ECF:**              /s/
>                    Ivan A. Mendez, Jr.
>                    Assistant Corporation Counsel

**ALAN M. SCHLESINGER,**
**IVAN A. MENDEZ, JR.**
   Of Counsel