07-Civ.-8032 (LAK)(AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVATORE COSTA,

Plaintiff,

-against-

THE CITY OF NEW YORK and CHIEF JOE FOX,

Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-184
New York, N.Y. 10007-2601

Of Counsel: Ivan A. Mendez, Jr.
Tel: (212) 788-8688

Matter No.: 2007-029207

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 4

THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. .......... 4

A. Plaintiff Fails To State A Claim Of Constructive Discharge. .......... 4

B. Plaintiff's "Class of One" Claim Is Fatally Deficient .......... 6

C. The Burlington Northern Standard Is Inapplicable .......... 7

D. Chief Fox Is Entitled To Qualified Immunity .......... 8

CONCLUSION .......... 9

## PRELIMINARY STATEMENT

Plaintiff, a retired Police Lieutenant formerly employed by the City of New York ("City") in the City's Police Department ("NYPD"), brought this § 1983 action against the City, and NYPD Assistant Commissioner Joseph Fox ("Chief Fox")[1], alleging that he was retaliated against for lawfully performing his duties as an NYPD Lieutenant. Plaintiff alleges that in 2004, he issued a summons to a "friend" of Chief Fox, and that Chief Fox thereafter initiated a campaign of retaliation against him, including harassment, a transfer, and eventually forcing him to retire prematurely.

Defendants moved to dismiss the Amended Complaint on the grounds that it failed to state an Equal Protection or constructive discharge claim. In opposition to the defendants' motion, plaintiff cites to several inapposite cases, and contends that he has alleged sufficient facts to state a claim of constructive discharge. However, even if the plaintiff's wild and unsupported allegations were true, no reasonable person would find plaintiff's work environment so intolerable that plaintiff was forced into involuntary resignation.

Plaintiff also contends that the Court should apply the definition of "materially adverse employment action" enunciated by the Supreme Court in Burlington Northern and Santa Fe Ry. Co. v. White, ("Burlington Northern"), to his "class of one" claims. ___ U.S. ___, 126 S. Ct. 2405, 2415 (2006). That standard, however, applies only to retaliation claims. Plaintiff does not, and, indeed, cannot allege that he was retaliated against for engaging in conduct that is protected by the Constitution or any Civil Rights statute – he merely alleges he was retaliated against for doing his job. Thus, his reliance on Burlington Northern, is entirely misplaced.

Finally, plaintiff's Equal Protection "class of one" claim must also be dismissed. Plaintiff has failed to allege that similarly situated NYPD Lieutenants were not retaliated against

---

[1] Chief Fox is sued as "Chief Joe Fox." References to "§ 1983" are to 42 U.S.C. § 1983.

for issuing summonses to friends of Chief Fox, and this failure is fatal to his "class of one" claim.

## STATEMENT OF FACTS[2]

Plaintiff was appointed as a Police Officer in the NYPD on July 16, 1984. See First Amended Complaint, dated December 9, 2007 ("Amended Complaint"), ¶ "9." Plaintiff was promoted to the ranks of Sergeant and Lieutenant in December, 1998, and March, 2002, respectively. Id. ¶¶ "10," and "11." On October 18, 2004, plaintiff issued a summons to retired NYPD Sergeant Louis A. Campanelli for failing to wear a seatbelt while driving a motor vehicle. Id. ¶¶ "12," "13." Plaintiff alleges that Mr. Campanelli and Chief Fox worked together when they were Police Officers, and that they "continue to be friends today." Id. ¶¶ "14," 15." According to plaintiff, the day after he issued a summons to Mr. Campanelli, "at the direction of [Chief] Fox, Captain Dominik Collisuano called plaintiff at his home and stated that Plaintiff was in 'big trouble' because he wrote a summons to Campanelli." Id. ¶ "16." Plaintiff alleges that Captain Collisuano demanded that plaintiff provide him with a copy of the summons he issued to Mr. Campanelli. Id. ¶ "17."

Two days later, according to plaintiff, two unidentified NYPD Inspectors, Captain Jackle, and Lieutenant Richard Tully, arrived at the plaintiff's precinct while he was conducting roll call, and searched plaintiff's locker and uniform shirt and pant pockets "purportedly seeking a memo book that Plaintiff reported missing." Amended Complaint at ¶¶ "18," "19." Plaintiff further alleges that on October 28, 2004, he was sent to the NYPD Inspections Unit where he was "interrogated for two hours as to why he issued a summons to Campanelli." Id. ¶ "21."

---

[2] On a motion to dismiss, the allegations of fact in the complaint are deemed true and the legal sufficiency of the complaint is tested. This statement of facts is drawn from the Complaint and defendants neither admit nor deny any of the facts alleged therein.

Thereafter, plaintiff alleges that he was transferred to the NYPD's 69th Precinct, which, according to plaintiff, is the farthest Brooklyn Precinct from his home. Id. ¶ "22." Plaintiff alleges that his assignment to the day shift at the 69th Precinct resulted in a 10% decrease in his salary. Id. ¶ "23." He also contends that pursuant to orders of Chief Fox, he was not allowed to take the time he wanted off from work, and was subjected to absurd and unnecessary levels of scrutiny. Id. ¶¶ "24," and "25." This, according to plaintiff, was done in order to force him to retire prematurely. Id. ¶¶ "25," and "28." Plaintiff alleges that as a result of the purported harassment he was subjected to at the 69th Precinct, he "chose to retire on December 31, 2004", only two months after his transfer. Id. ¶ "31."

On September 13, 2007, plaintiff commenced this action, alleging that defendants retaliated against him and constructively terminated his employment because he issued a traffic summons to a friend of Chief Fox.

On November 6, 2007, defendants moved to dismiss on the grounds that plaintiff failed to state a claim upon which relief could be granted.

By Order, dated November 28, 2007, the Court granted defendants' motion to dismiss, without prejudice, and granted plaintiff leave to submit an amended complaint.

On December 12, 2007, plaintiff filed an amended complaint, dated December 9, 2007.

## ARGUMENT

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

### A. Plaintiff Fails To State A Claim Of Constructive Discharge.

In opposition to defendants' motion, plaintiff ignores the defendants' argument that his constructive discharge claim must fail in this Equal Protection case, because he does not allege the "discriminatory element of [a] hostile work environment claim." Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006)(internal citations omitted). Plaintiff does not allege that he belongs to any protected class, and he does not allege that he was constructively discharged because of any protected characteristic or conduct. In light of these undisputed facts, plaintiff's constructive discharge claim must be dismissed. Id.; see Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003)("in order to state a prima facie case for constructive discharge, a plaintiff must establish that the constructive discharge 'occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class.'")(emphasis supplied)(quoting Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)).

An additional ground for dismissal of plaintiff's constructive discharge claim is that he has not alleged sufficient facts to show that a reasonable person in his situation would have felt compelled to retire. In opposition to this argument, plaintiff relies on the Second Circuit's decision in Chertkova, 92 F.3d 81. The decision in Chertkova, however, is readily distinguishable from the instant case. In Chertkova, plaintiff claimed she was constructively discharged after enduring gender-based discrimination for a period of approximately 2 years. 92 F.3d at 84-86. Although the plaintiff proceeded under a constructive discharge theory, the Second Circuit held that plaintiff had also made sufficient allegations to state a claim of actual

discharge, and that the issue of whether plaintiff was "actually discharged is not susceptible on this record to resolution by summary judgment." Id. at 88-89. The Court also noted that plaintiff "presented evidence sufficient to overcome a motion for summary judgment on the question of constructive discharge." Id. at 89. The allegations put forth by plaintiff covered a period of approximately 2 years, and included comments from 2 supervisors that plaintiff would not "be around." Id. The Court also found that "[a]n inference that the conditions were intolerable is further bolstered by the fact that plaintiff's former supervisor, Patricia Endweiss, was terminated for reasons similar to those that allegedly formed the basis for O'Neil's disapproval of plaintiff. Moreover, the timing of [plaintiff's] nervous breakdown -- although the cause is disputed -- suggests a connection between plaintiff's work conditions and her decision to leave." Id.

As an initial matter, the conduct alleged by plaintiff does not come close to approaching the severity of the conduct alleged in Chertkova. One of the he most glaring differences between plaintiff's case and Chertkova, is that the alleged conditions in Chertkova, persisted over a period of approximately 2 years. Plaintiff's claims span a period of only 2 months. In addition, unlike the plaintiff in Chertkova, who was a private "at-will" employee, plaintiff herein was a tenured civil servant with 20 years of service. Plaintiff's employment was covered by a collective bargaining agreement, a grievance procedure, and the civil service laws of the State and City of New York. Plaintiff could not be terminated from his position absent a criminal conviction, or a departmental disciplinary hearing pursuant to the New York City Administrative Code.[3] Plaintiff does not allege that he ever took advantage of any of these procedures, which is fatal to his claim of constructive discharge. See Silverman v. City of New

[3] It bears noting that even if plaintiff received an adverse decision after a full departmental hearing, he would still be able to appeal such a decision via an Article 78 proceeding in New York State Supreme Court. See N.Y.C.P.L.R. § 7803, et seq.

York, 216 F.Supp.2d 108, 115 (E.D.N.Y. 2002)(citing cases and holding that "courts in this circuit generally have refused to find a constructive discharge where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere leading up to his resignation, but failed to take advantage thereof."). Accordingly, plaintiff's constructive discharge claim should be dismissed.

**B. Plaintiff's "Class of One" Claim Is Fatally Deficient.**

Plaintiff urges the Court to adopt the less stringent "similarly situated" standard applied at the summary judgment stage in the employment discrimination context. However, as the Second Circuit stressed in Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), "class of one" plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. This showing is more stringent than that used at the summary judgment stage in the employment discrimination context. Id. at 105. Accordingly, to succeed on a "class of one" claim, a plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Id. Thus, plaintiff's allegation that the "similarly situated" standard set forth by defendants is "impossible" and "unrealistic," is without merit -- defendants have cited the correct standard.

Plaintiff also erroneously asserts that defendants are requiring plaintiff, at the pleading stage, to "allege specific instances of how others similarly situated were treated differently, such as 'naming names.'" Pl. Memo at 7. Plaintiff's argument entirely misses the point. Defendants have never argued that plaintiff was required to "name names" at the pleading

stage. Defendants merely contend that if plaintiff truly has a good faith basis for alleging that other similarly situated Lieutenants – not Police Officers, Sergeants, Captains, etc.[4] – have been treated differently after they issued summonses to "friends" of Chief Fox, he should have no problem making such an allegation. His failure to do so, even after being given an opportunity to amend his complaint, raises serious doubts as to the plausibility and good faith basis of his "class of one" claim. Having already been given an opportunity to cure the pleading deficiencies in his complaint, the plaintiff's "class of one" claim should be dismissed with prejudice.

### C. The Burlington Northern Standard Is Inapplicable

Plaintiff contends that the Court should apply the broader definition of "materially adverse employment action" set forth in Burlington Northern, to his claims in this action. Plaintiff does not provide any legal support for this proposition, and defendants are unaware of any decisions applying the Burlington Northern standard to a "class of one" claim. Although plaintiff repeatedly alleges he was retaliated against for "lawfully performing his duties as a New York City Police lieutenant", this claim is not actionable under the First Amendment, as plaintiff appears to suggest in the second footnote of his Memorandum in Opposition. See Brewster v. City of Poughkeepsie, 434 F.Supp.2d 155 (S.D.N.Y.), judgment as a matter of law granted on remaining claims, 447 F.Supp.2d 342 (S.D.N.Y. 2006). Thus, to the extent that plaintiff is asserting a separate claim of retaliation, such a claim is legally untenable and must be dismissed. Moreover, the Court should reject plaintiff's misguided attempt to apply the Burlington Northern, standard to plaintiff's "class of one" claim.

---

[4] Querry v. Messar, 66 F. Supp. 2d 563, 572 (S.D.N.Y. 1999)(police officer and police sergeant not similarly situated)

**D. Chief Fox Is Entitled To Qualified Immunity**

Plaintiff contends that "Defendant Fox certainly knew that Plaintiff had a right to be free from retaliation for lawfully performing his duties as a New York City Police lieutenant." Pl. Memo at 8. The alleged conduct plaintiff imputes to Chief Fox, however allegedly "repugnant to a reasonable person's sensibilities", did not violate a clearly established constitutional right. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987) (the contours of the right must be clearly established and not merely a general right so that the official will know in advance that he or she is violating a constitutional right); Malley v. Briggs, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 1095-96 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). To determine if a right is clearly established, the Court looks to cases from the Supreme Court and the relevant Circuit. See Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). An allegation that a government official's action might violate a state protected right is insufficient to strip that official of qualified immunity. Davis. v. Scherer, 468 U.S. 183, 193-94, 104 S. Ct. 3012, 3019 (1984).

As noted by the Second Circuit in Bizarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005), the parameters of "class of one" claims under Olech, were unclear when Bizarro, was decided in 2005. Even prior to Olech, violations of equal protection predicated not on protected class status, but on "selective treatment motivated by ill-will", were considered to be "lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." Le Clair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980). Accordingly, in light of the fact that reasonable officials could disagree whether the conduct imputed to Chief Fox was unconstitutional at the time the alleged acts took place, Chief Fox is entitled to qualified immunity, and all claims against him should be dismissed.

## CONCLUSION

**WHEREFORE**, defendants respectfully request that their motion to dismiss be granted, that an order dismissing the Amended Complaint be issued, that judgment in favor of defendants be entered and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 14, 2008

**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street, Room 2-184
New York, New York 10007-2601
(212) 788-8688
imendez@law.nyc.gov

By: **ECF:** /s/
Ivan A. Mendez, Jr.
Assistant Corporation Counsel

**PAUL MARKS,**
**IVAN A. MENDEZ, JR.**
Of Counsel